# Third District Court of Appeal

## State of Florida

Opinion filed December 31, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1841
Lower Tribunal No. 10-30306
_____


**Victor Lerner, etc., et al.,**
Appellants,

vs.

**Ino Halegua, etc., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Norma S. Lindsey, Judge.

Anna Lenchus (Boca Raton), for appellants.

Jones & Adams and Matthew L. Jones and Giovanna A. Abreu, for appellees.


Before SALTER, EMAS and SCALES, JJ.

SALTER, J.

Victor Lerner appeals an order imposing sanctions for litigation misconduct and a partial final judgment on liability. We reverse and remand based on Mr. Lerner's well-taken objections to the admission of certain photographs during the evidentiary hearing on the appellees' claims of litigation misconduct.

Facts and Procedural History

The claims and counterclaims in an otherwise unremarkable civil lawsuit were in mid-trial before a jury. On a Saturday morning, after four days of trial, a strange sequence of events unfolded. Mr. Lesley Winston, a professional advisor to appellee Ino Halegua, received a call at his condominium from the Aventura Police asking if they could visit him there. When Mr. Winston's wife opened the door to admit the police, several notes fell to the floor. The Winstons and the police found crudely-printed anonymous messages on the notes threatening Mr. Winston and others with bodily harm, as well as five live-round bullets and a photo of Mr. Winston marked "X" on each leg.

The police had been called by Mr. Winston's housekeeper from his office. While cleaning the office earlier that Saturday morning, the housekeeper found other notes and bullets that had been inserted through the office mail slot. When she was unable to reach Mr. Winston by telephone, she contacted the police and asked them to visit his condominium.

2

When the police interviewed Mr. Winston, he identified only one person he thought might have left the messages and bullets—a former business relation of Mr. Winston's who had no connection whatsoever to the pending lawsuit and trial. The police asked the condominium security officer to review the video surveillance camera tapes for the main entrance gate and the building lobby. The police report stated that "[n]o evidence was found from both camera systems."

Later that weekend, and before the resumption of the scheduled trial Monday morning, Mr. Winston himself reviewed the condominium surveillance tapes at the lobby desk and said that he recognized Mr. Lerner as an individual coming through the third floor parking garage door early that Saturday morning, shortly before the notes and bullets were found. Mr. Winston took several still photographs of frames from the surveillance tape, purporting to show Mr. Lerner and the date and time shown by the video camera. Mr. Winston shared this information with the police, identified Mr. Lerner from a photo lineup, and pressed criminal charges against Mr. Lerner.

When the civil trial resumed Monday morning, defense counsel proffered Mr. Winston's testimony regarding the threats, moved for a mistrial, and moved to strike Mr. Lerner's pleadings based on litigation misconduct. The trial court declared a mistrial and scheduled an evidentiary hearing on the litigation misconduct issues. Mr. Lerner's counsel withdrew, and his replacement counsel

3

sought a continuance of the evidentiary hearing to allow additional preparation and for the completion of the criminal case. That motion was granted in part, but the evidentiary hearing in the civil case was conducted before the originally-scheduled trial date in the criminal case. At the evidentiary hearing, and after consultation with his attorney, Mr. Lerner invoked his Fifth Amendment rights to decline to answer questions regarding the placement of the bullets and notes at Mr. Winston's office and condominium.

At the hearing, Mr. Halegua's counsel moved into evidence the four still photographs purportedly taken by Mr. Winston from the condominium surveillance camera videotape recorded the morning of the incident. Over timely objection, the photos were admitted. The trial court granted Mr. Halegua's motion for sanctions for litigation misconduct, struck Mr. Lerner's (and his companies') pleadings, and entered judgment in favor of Mr. Halegua and his companies. This appeal followed.

Analysis

Mr. Lerner raises several arguments here, but we address one we have determined to be well taken and substantially prejudicial. The still photographs allegedly depicting the condominium surveillance camera frames of Mr. Lerner at Mr. Winston's condominium the morning of the incident were admitted over a

4

timely objection to authenticity and identification. Section 90.901, Florida Statutes (2014), states:

> Authentication or identification of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Counsel for Mr. Halegua argues that Mr. Winston properly identified and authenticated the photos as depictions of Mr. Lerner, who Mr. Winston had observed in court during the trial. As proponent for the introduction of the photos, however, Mr. Halegua asserted that the underlying surveillance video (and thus the photos taken from the video) had recorded Mr. Lerner in the act of entering the condominium building at a time and date linking Mr. Lerner to the delivery of the threatening, anonymous notes and bullets.

However, no authentication or identification testimony for the underlying surveillance video was offered from the condominium security officer or vendor responsible for the operation of the videocamera and knowledgeable regarding the date, time, and storage procedures for the particular video footage and scenes photographed by Mr. Winston. On several of the photos, the date and time information was obscured or inconsistent.

In Cirillo v. Davis, 732 So. 2d 387 (Fla. 4th DCA 1999), the Fourth District reviewed the requirements for authentication of videotape under the "silent witness" theory (when there is no individual videographer available to testify

5

regarding videotape taken by a remotely-controlled surveillance camera). Cirillo and a First District case upon which it relies, Wagner v. State, 707 So. 2d 827 (Fla. 1st DCA), rev. denied, 717 So. 2d 542 (Fla. 1998), establish a practical and reliable means for authenticating such "silent witness" videotapes. A witness responsible for the videotape system, able to confirm the accuracy of the time and date on which the tape was made, and able to confirm that the tape was not edited or tampered with, should be presented if there is no stipulation on these points, to "provide the indicia of reliability required to authenticate a videotape for purposes of the 'silent witness theory.'" Wagner, 707 So. 2d at 830.

Mr. Halegua argues that the individual photos depicting frames of the surveillance videotape are admissible under the analysis in H.A. v. State, 24 So. 3d 752 (Fla. 3d DCA 2009). In that case, however, the drugstore employee who authenticated photos of videotape frames had actually observed the theft depicted on the videotape and in the photos. The same employee also testified that the photos had been downloaded directly from the surveillance video recorded the night of the theft, and that he had seen the photos on a video monitor. That employee then identified the defendant charged with the theft shown in the photos.

In the present case, Mr. Winston did not personally observe the events depicted on the surveillance videos or the photos. The record here reflects that Mr. Winston had no responsibility for the operation, placement, or maintenance of the

6

videocamera in question, and he had no direct knowledge regarding the procedure for retrieving or copying those portions of a video record that might be pertinent to the investigation at issue here.

In the absence of the photos admitted over Mr. Lerner's objection, the evidence at the hearing in the civil case fell short of the "clear and convincing" showing necessary to support the dismissal of Lerner's claims and defenses for fraudulent or unconscionable litigation misconduct. Sky Dev., Inc. v. Vistaview Dev., Inc., 41 So. 3d 918 (Fla. 3d DCA 2010). Our reversal on this point obviates the need to consider Lerner's other points on appeal, as his counsel have now had ample opportunity to complete their investigation, and Mr. Lerner's concerns regarding the pending criminal case have since been eliminated.

The order of July 10, 2014, granting the defendants' motion for sanctions is reversed, as is the final judgment in their favor. The case is remanded for a new evidentiary hearing in the event the defendants renew their motion for sanctions.

Reversed and remanded.

7